## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT ALEXANDER, JR., DAVID VITO, MICHAEL CLANCY, and MARIO CANARIO, individually, and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>BRISTOL COMMUNITY COLLEGE.<br><br>        Defendant. | Case No. _____<br><br><br><br><br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

### <u>COMPLAINT – CLASS ACTION</u>

Plaintiffs Robert Alexander, Jr., David Vito, Michael Clancy, and Mario Canario (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, bring this action against Bristol Community College ("Bristol" or "Defendant"), by and through their attorneys, and allege, based upon personal knowledge as to their own actions, and based upon information and belief as to all other matters, as follows:

### <u>INTRODUCTION</u>

1.      Defendant is a public community college with four campus locations in Massachusetts, as well as comprehensive online services.[1]

2.      Defendant provides more than 130 study programs and offers classes for earning a degree or engaging in work-related training, leisure activities, or child entertainment.[2]

---

[1] *About*, Bristol Community College, https://www.bristolcc.edu/about/index.html (last accessed May 23, 2023).

[2] *Id.*

3.     As part of its business activities, Defendant collects, maintains, and stores its students' and employees' highly sensitive personal information including, but not limited to, their full names and Social Security numbers ("personally identifying information" or "PII").[3]

4.     Although Defendant is a sophisticated entity that has provided services to tens of thousands of students, Defendant failed to invest in adequate data security, thereby allowing hackers to exfiltrate the highly-sensitive personal information of approximately 56,400 individuals, including Plaintiffs and Class members.[4] As a direct, proximate, and foreseeable result of Defendant's failure to implement reasonable security protections sufficient to prevent an eminently avoidable cyberattack, unauthorized actors compromised Defendant's network and accessed thousands of student files containing highly-sensitive PII. *See* Exhibit A.

5.     Specifically, between December 14, 2022, and December 23, 2022, Defendant's students' sensitive personal data was compromised when unauthorized actors were able to breach Defendant's network and access files containing approximately 56,400 individuals' PII (the "Data Breach").[5]

6.     Despite the fact that some of the categories of PII exposed in the Data Breach, such as Social Security numbers, cannot be changed, Defendant failed to detect the breach until almost *four months* later, on or around April 10, 2023, and failed to notify affected individuals until on or around May 10, 2023—approximately *one month* after unauthorized individuals accessed Plaintiffs' and current and former students' and employees' highly sensitive PII stored on Defendant's systems.[6]

---

[3] *Data Breach Notification Sample*, Office of the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/4dbb3012-8b00-4860-8fa0-e0021b638859.shtml, attached hereto as **Exhibit A**.
[4] *Id.*
[5] *Id.*
[6] *Id.*

7.      Defendant's failure to promptly notify Plaintiffs and Class members that their PII was exfiltrated due to Defendant's security failures virtually ensured that the unauthorized third parties who exploited those security lapses could monetize, misuse and/or disseminate that PII before Plaintiffs and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiffs and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

8.      Defendant failed to take sufficient and reasonable measures to safeguard its data security systems and protect highly sensitive data in order to prevent the Data Breach from occurring; to disclose to current and former students the material fact that it lacked appropriate data systems and security practices to secure PII; and to timely detect and provide adequate notice of the Data Breach to affected individuals. Due to Defendant's failures, Plaintiffs and approximately 56,400 individuals suffered substantial harm and injury.

9.      As a result of Defendant's negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy its contractual, statutory, and common-law obligations, Plaintiffs' and Class members' PII was accessed and acquired by unauthorized third parties for the express purpose of misusing the data and causing further irreparable harm to the personal, financial, reputational, and future well-being of Defendant's current and former students. Plaintiffs and Class members face the real, immediate, and likely danger of identity theft and misuse of their PII, especially because their PII was specifically targeted by malevolent actors.

10.      Plaintiffs and Class members suffered injuries as a result of Defendant's conduct including, but not limited to: lost or diminished value of their PII; out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; lost opportunity costs associated with attempting to mitigate the

actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; time needed to change usernames and passwords on their accounts; time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach; charges and fees associated with fraudulent charges on their accounts; and the continued and increased risk of compromise to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their PII. These risks will remain for the lifetimes of Plaintiffs and the Class.

11.     Accordingly, Plaintiffs bring this action on behalf of all those similarly situated to seek relief from Defendant's failure to reasonably safeguard Plaintiffs' and Class members' PII; their failure to reasonably provide timely notification that Plaintiffs' and Class members' PII had been compromised by an unauthorized third party; and for intentionally and unconscionably deceiving Plaintiffs and Class members concerning the status, safety, location, access, and protection of their PII.

## PARTIES

### *Plaintiff Robert Alexander, Jr.*

12.     Plaintiff Robert Alexander, Jr. is a resident and citizen of Massachusetts, residing in Fall River, Massachusetts. Plaintiff Robert Alexander, Jr. received a letter from Defendant concerning the data breach on or about May 15, 2023.

### *Plaintiff David Vito*

13.     Plaintiff David Vito is a resident and citizen of Rhode Island, residing in Warwick, Rhode Island. Plaintiff David Vito received a letter from Defendant concerning the data breach on or about May 10, 2023.

### *Plaintiff Michael Clancy*

14.     Plaintiff Michael Clancy is a resident and citizen of Rhode Island, residing in Warren, Rhode Island. Plaintiff Michael Clancy received a letter from Defendant concerning the data breach on or about May 15, 2023.

### *Plaintiff Mario Canario*

15.     Plaintiff Mario Canario is a resident and citizen of Rhode Island, residing in Warren, Rhode Island. Plaintiff Mario Canario received a letter from Defendant concerning the data breach on or about May 15, 2023.

### *Defendant Bristol Community College*

16.     Defendant Bristol Community College is a public community college organized under the laws of the Commonwealth of Massachusetts with its principal place of business at 777 Elsbree Street, Fall River, Massachusetts, 02720.

### JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of class members exceeds 100, and at least one member of the Class is a citizen of a state different from Defendant. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

18.     This Court has personal jurisdiction over Defendant because Defendant is authorized to and regularly conducts business in Massachusetts, and is headquartered in this District.

19.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' and Class members' claims occurred in this District.

## FACTUAL ALLEGATIONS

### A.     Defendant – Background

20.     Defendant is a public community college providing comprehensive courses and classes with over 130 different programs of study including associates degrees in science, arts, applied sciences, and other certificates of achievement.[7] Defendant represents to their students that it will provide "an accessible, innovative and inclusive education that prepares students to navigate and succeed in our ever-changing world."[8]

21.     As part of its business operations, Defendant collects, maintains, and stores  highly sensitive PII provided by their current and former students, including but not limited to, their full names and Social Security numbers.

22.     On information and belief, at the time of the Data Breach, Defendant failed to implement necessary data security safeguards, which resulted in unauthorized third parties accessing the PII of approximately 56,400 current and former students.[9]

23.     Current and former students of Defendant, such as Plaintiffs and Class members, allowed their PII to be made available to Defendant with the reasonable expectation that Defendant would comply with its obligation to keep their sensitive and personal information, including their

---

[7] *About*, Bristol Community College, https://www.bristolcc.edu/about/index.html (last accessed May 23, 2023).
[8] *Mission, Vision & Values*, Bristol Community College,
https://www.bristolcc.edu/about/missionvisionvalues.html (last accessed May 23, 2023).
[9] *Data Breach Notification Sample*, Office of the Maine Attorney General,
https://apps.web.maine.gov/online/aeviewer/ME/40/4dbb3012-8b00-4860-8fa0-e0021b638859.shtml (last accessed May 23, 2023).

PII, confidential and secure from illegal and unauthorized access, and that Defendant would provide them with prompt and accurate notice of any unauthorized access to their PII.

24.    Unfortunately for Plaintiffs and Class members, Defendant failed to carry out their duty to safeguard sensitive PII and provide adequate data security, thus failing to protect Plaintiffs and Class members from the exfiltration of their PII during the Data Breach.

**B.    The Data Breach**

25.    Defendant disclosed in a Notice sent on or about May 10, 2023, to Plaintiffs and other affected individuals that they were affected by a "recent security incident" in which an unauthorized third party accessed Defendant's network and exfiltrated data concerning Defendant's current and former students. *See* Notice of Data Breach, attached hereto as **Exhibit A**. Further, Defendant acknowledged that the unauthorized actor was able to exfiltrate Plaintiffs' and Class members' PII and Social Security numbers.

26.    Defendant admitted that the breach "occurred between December 14 and December 23, 2022." Exhibit A. Despite experiencing the effects of the Data Breach on or about December 14, 2022, Defendant did not discover the Data Breach until April 10, 2023. Exhibit A.

27.    Defendant failed to disclose to Plaintiffs and other victims of the Data Breach how long the unauthorized actor had access to Plaintiffs' and Class members' information. Instead, Defendant admitted to the Office of the Maine Attorney General that the unauthorized actor had unfettered access to Defendant's computer systems, and Plaintiffs' and other students' PII and Social Security numbers.[10]

28.    Defendant asserts that it "launched an investigation in consultation with external national cybersecurity professionals who regularly investigate and analyze these types of situations

---

[10] *Data Breach Notification Sample*, Office of the Maine Attorney General,
https://apps.web.maine.gov/online/aeviewer/ME/40/4dbb3012-8b00-4860-8fa0-e0021b638859.shtml.

to determine the extent of any compromise to the information on our network." *See* Exhibit A. However, Defendant was not able to secure its computer systems until on or after April 10, 2023, almost *four months* after the Data Breach occurred.[11] Defendant failed to disclose to Plaintiffs and Class members that Defendant was unable to quickly remove the hacker's access to Defendant's computer systems. *See* Exhibit A.

29.     Despite discovering the Data Breach on April 10, 2023, and confirming that the unauthorized actor accessed and exfiltrated students' PII and Social Security numbers, Defendant delayed sending individualized notice to affected students until on or after May 10, 2023. *See* Exhibit A.

30.     During the time that the unauthorized individuals had unrestricted access to Defendant's network, they were able to access and acquire personal, sensitive, and protected PII belonging to over 56,400 current and former students of Defendant.

**C.     Defendant's Many Failures Both Prior to and Following the Breach**

31.     Defendant could have prevented this Data Breach by properly encrypting or otherwise protecting its equipment and network files containing PII.

32.     To be sure, collecting, maintaining, and protecting PII is vital to virtually every aspect of Defendant's operations as a community college.

33.     Despite such importance, Defendant failed to detect that its own data systems were compromised until on or around April 10, 2023.[12]

---

[11] *Id.*
[12] *Data Breach Notification Sample*, Office of the Maine Attorney General, https://apps.web.maine.gov/online/aeviewer/ME/40/4dbb3012-8b00-4860-8fa0-e0021b638859.shtml.

34. Moreover, when Defendant finally acknowledged that it had experienced a breach, it failed to fully inform affected individuals of the length of time that the unauthorized actors had access to their PII, or even the full extent of the PII that was accessed during the Data Breach.

35. Defendant's failure to properly safeguard Plaintiffs' and Class members' PII allowed the unauthorized actors to access this highly sensitive PII, and Defendant's failure to timely notify Plaintiffs and other victims of the Data Breach that their PII had been misappropriated precluded them from taking meaningful steps to safeguard their identities prior to the dissemination of their PII.

36. The Data Breach also highlights the inadequacies inherent in Defendant's network monitoring procedures. If Defendant had properly monitored its cyber security systems, it would have prevented the Data Breach, discovered the Data Breach sooner, and/or have prevented the hackers from exfiltrating PII.

37. Defendant's delayed response only further exacerbated the consequences of the Data Breach brought on by its systemic IT failures.

38. First, Defendant failed to timely secure its computer systems to protect its current and former students' PII. Defendant allowed the unauthorized actors to continue to have unfettered access to Defendant's systems for almost *four months* until Defendant finally discovered the Data Breach.

39. Second, Defendant failed to timely notify affected individuals, including Plaintiffs and Class members, that their highly-sensitive PII had been accessed by unauthorized third parties. Defendant waited another month after discovering the Data Breach to provide notice to the victims of the Data Breach that their PII had been compromised.

40.     Third, Defendant made no effort to protect Plaintiffs and the Class from the long-term consequences of Defendant's acts and omissions. Although the Notice offered victims one-year of complimentary Experian credit monitoring, Plaintiffs' and Class members' PII, including their Social Security numbers, cannot be changed and will remain at risk long beyond one year. As a result, Plaintiffs and the Class will remain at a heightened and unreasonable risk of identity theft for the remainder of their lives.

41.     In short, Defendant's myriad failures, including the failure to timely detect the Data Breach and to notify Plaintiffs and Class members with reasonable timeliness that their personal information had been exfiltrated due to Defendant's security failures, allowed unauthorized individuals to access and misappropriate Plaintiffs' and Class members' PII for months before Defendant finally granted victims the opportunity to take proactive steps to defend themselves and mitigate the near- and long-term consequences of the Data Breach.

**D.     Data Breaches Pose Significant Threats**

42.     Data breaches have become a constant threat, and the PII exfiltrated during such an attack, including Social Security numbers in particular, are a particularly valuable commodity and a frequent target of hackers.

43.     In 2022, the Identity Theft Resource Center's Annual End-of-Year Data Breach Report listed 1,802 total compromises involving 422,143,312 victims for 2022, which was just 50 compromises short of the current record set in 2021.[13]

44.     Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data

---

[13] *2022 End of Year Data Breach Report*, Identity Theft Resource Center (January 25, 2023), available at: https://www.idtheftcenter.org/publication/2022-data-breach-report/?utm_source=press+release&utm_medium=web&utm_campaign=2022+Data+Breach+Report.

breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 1,862 in 2021, to 2022's total of 1,802.[14] The number of impacted individuals has also risen precipitously from approximately 318 million in 2015 to 422 million in 2022, which is an increase of nearly 50%.[15]

45.     Data breaches are a constant threat because PII is routinely traded on the dark web as s simple commodity, with Social Security numbers being so ubiquitous that they are being  sold for $2.99 apiece, and with passports retailing for approximately $15 apiece.[16]

46.     In addition, the severity of the consequences of a compromised Social Security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory elements can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

> [a] dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[17]

This is exacerbated by the fact that the problems arising from a compromised Social Security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing his

---

[14] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2022*, Statista, available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/ (last accessed last accessed March 23, 2023).
[15] *Id.*
[16] *What is your identity worth on the dark web?* Cybernews (September 28, 2021), available at: https://cybernews.com/security/whats-your-identity-worth-on-dark-web/ (last accessed March 23, 2023).
[17] United States Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf  (last accessed March 23, 2023).

or her number unless and until it is actually misused and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

> Keep in mind that a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[18]

47.    In addition, the Federal Trade Commission ("FTC") has brought dozens of cases against companies that have engaged in unfair or deceptive practices involving inadequate protection of consumers' personal data. The FTC publicized these enforcement actions to place companies like Defendant on notice of their obligation to safeguard customer information.

48.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warnings to potential targets so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

49.    Given the nature of Defendant's Data Breach, as well as the length of the time Defendant's networks were breached and the long delay in notification to the Class, it is foreseeable that the compromised PII has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class members' PII can easily obtain Plaintiff's and Class members' tax returns or open fraudulent credit card accounts in Class members' names.

50.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data

---

[18] *Id.*

breach, because credit card victims can cancel or close credit and debit card accounts.[19] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

51. To date, Defendant has offered its consumers *only one year* of identity theft monitoring services. The offered services are inadequate to protect Plaintiff and the Class from the threats they will face for years to come, particularly in light of the PII at issue here.

52. Despite the prevalence of public announcements of data breach and data security compromises, its own acknowledgment of the risks posed by data breaches, and its own acknowledgment of its duties to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiff and the Class from misappropriation. As a result, the injuries to Plaintiff and the Class were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for its current and former students.

**E.    Defendant Had a Duty and Obligation to Protect PII**

53. Defendant has an obligation, both statutory and self-imposed, to keep confidential and protect from unauthorized access and/or disclosure Plaintiffs' and Class members' PII. Defendant's obligations are derived from: 1) government regulations and state laws, including FTC rules and regulations; 2) industry standards; and 3) promises and representations regarding the handling of sensitive PII. Plaintiffs and Class members provided, and Defendant obtained, their PII on the understanding that their PII would be protected and safeguarded from unauthorized access or disclosure.

---

[19] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes, Mar 25, 2020, available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1.

54.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[20] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[21]

55.     The FTC has issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-marking.[22]

56.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[23] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[24] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts

---

[20] 17 C.F.R. § 248.201.
[21] *Id.*
[22] *Start With Security*, Federal Trade Commission (June 2015), available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.
[23] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n (Jan. 23, 2015), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business.
[24] *Id.*

of data being transmitted from the system; and have a response plan ready in the event of a breach.[25] Defendant clearly failed to do any of the foregoing, as evidenced by the length of the Data Breach, and the amount of data exfiltrated.

57.     Here, at all relevant times, Defendant was fully aware of its obligation to protect the PII of their current and former students, including Plaintiffs and the Class, and Defendant is a sophisticated and technologically savvy college educational institution that relies extensively on technology systems and networks, including transmitting their students' PII in order to operate their business.

58.     Defendant had, and continues to have, a duty to exercise reasonable care in collecting, storing, and protecting the PII from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between Defendant, and Plaintiffs and Class members. Defendant alone has the exclusive ability to implement adequate security measures to its cyber security network to secure and protect Plaintiffs' and Class members' PII.

59.     Defendant's failure to follow the FTC guidelines and their subsequent failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data constitutes unfair acts or practices prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 14 U.S.C. § 45.

60.     Further, Defendant had a duty to promptly notify Plaintiffs and the Class that their PII was accessed by unauthorized persons.

**F.     Defendant Violated FTC and Industry Standard Data Protection Protocols**

61.     The FTC rules, regulations, and guidelines obligate businesses to protect PII, from unauthorized access or disclosure by unauthorized persons.

---

[25] *Id.*

62.     At all relevant times, Defendant was fully aware of its obligation to protect its students PII because it is a sophisticated business entity that is in the business of maintaining and transmitting PII.

63.     Defendant was also aware of the significant consequences of its failure to protect PII for the thousands of students who provided their PII to Defendant, and knew that this data, if hacked, would injure students, including Plaintiffs and Class members.

64.     Unfortunately, Defendant failed to comply with FTC rules, regulations and guidelines, and industry standards concerning the protection and security of PII. As evidenced by the duration, scope, and nature of the Data Breach, among its many deficient practices, Defendant failed in, *inter alia*, the following respects:

   a.     Developing and employing adequate intrusion detection systems;

   b.     Engaging in regular reviews of audit logs and authentication records;

   c.     Developing and maintaining adequate data security systems to reduce the risk of data breaches and cyberattacks;

   d.     Ensuring the confidentiality and integrity of current and former students' PII that Defendant receives and maintains;

   e.     Protecting against any reasonably anticipated threats or hazards to the security or integrity of its current and former students' PII;

   f.     Implementing policies and procedures to prevent, detect, contain, and correct security violations;

   g.     Developing adequate policies and procedures to regularly review records of system activity, such as audit logs, access reports, and security incident tracking reports;

   h.     Implementing technical policies, procedures and safeguards for electronically stored information concerning PII that permit access for only those persons or programs that have specifically been granted access; and

   i.     Other similar measures to protect the security and confidentiality of its current and former students' PII.

65.     Had Defendant implemented the above-described data security protocols, policies, and/or procedures, the consequences of the Data Breach could have been avoided or greatly reduced. Defendant could have prevented or detected the Data Breach prior to the hackers accessing Defendant's systems and extracting sensitive and personal information; the amount and/or types of PII accessed by the hackers could have been avoided or greatly reduced; and current and former students of Defendant would have been notified sooner, allowing them to promptly take protective and mitigating actions.

**G.      Defendant's Data Security Practices are Inadequate and Inconsistent with its Self-Imposed Data Security Obligations**

66.     Defendant purports to care about data security and safeguarding students' PII, and represents that they will keep secure and confidential the PII belonging to their current and former students.

67.     Plaintiffs' and Class members' PII was provided to Defendant in reliance on its promises and self-imposed obligations to keep PII confidential, and to secure the PII from unauthorized access by malevolent actors. Defendant failed to do so.

68.     The length of the Data Breach also demonstrates that Defendant failed to safeguard PII by, *inter alia*: maintaining an adequate data security environment to reduce the risk of a data breach; periodically auditing its security systems to discover intrusions like the Data Breach; and retaining outside vendors to periodically test its network, servers, systems and workstations.

69.     Had Defendant undertaken the actions that federal and state law require, the Data Breach could have been prevented or the consequences of the Data Breach significantly reduced, as Defendant would have detected the Data Breach prior to the hackers extracting data from Defendant's networks, and Defendant's current and former students would have been notified of

the Data Breach sooner, allowing them to take necessary protective or mitigating measures much earlier.

70. Indeed, following the Data Breach, Defendant effectively conceded that its security practices were inadequate and ineffective. In the Notice it sent to Plaintiffs and others, Defendant acknowledged that the Data Breach required it to launch an investigation "in consultation with external national cybersecurity professionals who regularly investigate and analyze these types of situations." *See* Exhibit A.

**H.     Plaintiffs and the Class Suffered Harm Resulting from the Data Breach**

71. Like any data hack, the Data Breach presents major problems for all affected.[26]

72. The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[27]

73. The ramifications of Defendant's failure to properly secure Plaintiffs' and Class members' PII are severe. Identity theft occurs when someone uses another person's financial, and personal information, such as that person's name, address, Social Security number, and other information, without permission in order to commit fraud or other crimes.

74. According to data security experts, one out of every four data breach notification recipients becomes a victim of identity fraud.

---

[26] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers.
[27] *Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft (last accessed March 11, 2023).

75.     Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

76.     Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiffs and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.[28]   Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[29] Javelin Strategy & Research, a leading provider of quantitative and qualitative research, notes that "[t]he theft of SSNs places consumers at a substantial risk of fraud."[30]   Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported.   Even data that has not yet been exploited by cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' PII will do so at a later date or re-sell it.

77.     In response to the Data Breach, Defendant offered to provide certain individuals whose PII was exposed in the Data Breach with one year of credit monitoring. However, this is much shorter than what is necessary to protect against the lifelong risk of harm imposed on Plaintiffs and Class members by Defendant's failures.

78.     Moreover, the credit monitoring offered by Defendant is fundamentally inadequate to protect them from the injuries resulting from the unauthorized access and exfiltration of their sensitive PII.

---

[28] *Data Breach Victims More Likely To Suffer Identity Fraud*, INSURANCE INFORMATION INSTITUTE BLOG (February 23, 2012), available at http://www.iii.org/insuranceindustryblog/?p=267.

[29] Susan Ladika, *Study: Data Breaches Pose A Greater Risk*, CREDITCARDS.COM (July 23, 2014), available at http://www.creditcards.com/credit-card-news/data-breach-id-theft-risk-increase-study-1282.php.

[30] THE CONSUMER DATA INSECURITY REPORT: EXAMINING THE DATA BREACH- IDENTITY FRAUD PARADIGM IN FOUR MAJOR METROPOLITAN AREAS.

79.     Here, due to the Breach, Plaintiffs and Class members have been exposed to injuries that include, but are not limited to:

      a.     Theft of PII;

      b.     Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the PII stolen during the Data Breach;

      c.     Damages arising from the inability to use accounts that may have been compromised during the Data Breach;

      d.     Costs associated with spending time to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite Defendant's delay in disseminating notice in accordance with state law;

      e.     The imminent and impending injury resulting from potential fraud and identity theft posed because their PII is exposed for theft and sale on the dark web; and

      f.     The loss of Plaintiffs' and Class members' privacy.

80.     Plaintiffs and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their PII being accessed by cybercriminals, risks that will not abate within a mere one to two years: the unauthorized access of Plaintiffs' and Class members' PII, especially their Social Security numbers, puts Plaintiffs and the Class at risk of identity theft indefinitely, and well beyond the limited period of credit monitoring that Defendant offered victims of the Breach. The one year of credit monitoring that Defendant offered to certain victims of the Data Breach is inadequate to

mitigate the aforementioned injuries Plaintiffs and Class members have suffered and will continue to suffer as a result of the Data Breach.

81.     As a direct and proximate result of Defendant's acts and omissions in failing to protect and secure PII, Plaintiffs and Class members have been placed at a substantial risk of harm in the form of identity theft, and have incurred and will incur actual damages in an attempt to prevent identity theft.

82.     Plaintiffs retain an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach on behalf of both themselves and similarly situated individuals whose PII was accessed in the Data Breach.

**I.     Plaintiff Robert Alexander, Jr.'s Experience**

83.     Plaintiff Alexander was a student at Bristol Community College from 1996 to 1997.

84.     Plaintiff Alexander received Bristol Community College's Data Breach Notice on or around May 15, 2023.

85.     Plaintiff Alexander was the victim of financial fraud in April when an unauthorized user accessed his bank account on three separate occasions and withdrew a total of $250 from his account. Plaintiff Alexander was forced to change his bank account information to prevent future fraud.

86.     As a result of the Data Breach, Plaintiff Alexander has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Alexander has spent several hours dealing with the Data Breach, valuable time Plaintiff Alexander otherwise would have spent on other activities, including, but not limited to, work and recreation.

87.     As a result of the Data Breach, Plaintiff Alexander has suffered anxiety due to the public dissemination of his PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his PII for purposes of identity theft and fraud.  Plaintiff Alexander is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

88.     Plaintiff Alexander suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Defendant obtained from Plaintiff; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

89.     Plaintiff Alexander suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Defendant obtained from Plaintiff; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

90.     As a result of the Data Breach, Plaintiff Alexander anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Alexander is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

J.     **Plaintiff David Vito's Experience**

91.     Plaintiff Vito was a student at Bristol Community College in 2005.

92.     Plaintiff Vito received Bristol Community College's Data Breach Notice on or around May 10, 2023.

93.     As a result of the Data Breach, Plaintiff Vito has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Vito has spent several hours dealing with the Data Breach, valuable time Plaintiff Vito otherwise would have spent on other activities, including, but not limited to, work and recreation.

94.     As a result of the Data Breach, Plaintiff Vito has suffered anxiety due to the public dissemination of his PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his PII for purposes of identity theft and fraud.  Plaintiff Vito is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

95.     Plaintiff Vito suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Defendant obtained from Plaintiff; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

96.     As a result of the Data Breach, Plaintiff Vito anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Vito is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## K.     Plaintiff Michael Clancy's Experience

97.     Plaintiff Clancy was a student at Bristol Community College from 1984 to 1989.

98.     Plaintiff Clancy received Bristol Community College's Data Breach Notice on or around May 15, 2023.

99.     As a result of the Data Breach, Plaintiff Clancy has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Clancy has spent several hours dealing with the Data Breach, valuable time Plaintiff Clancy otherwise would have spent on other activities, including, but not limited to, work and recreation.

100.    As a result of the Data Breach, Plaintiff Clancy has suffered anxiety due to the public dissemination of his PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his PII for purposes of identity theft and fraud.  Plaintiff Clancy is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

101.    Plaintiff Clancy suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Defendant obtained from Plaintiff; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

102.    As a result of the Data Breach, Plaintiff Clancy anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Clancy is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

**L.      Plaintiff Mario Canario's Experience**

103.     Plaintiff Canario was a student at Bristol Community College from 1988 to 1993.

104.     Plaintiff Canario received Bristol Community College's Data Breach Notice on or around May 15, 2023.

105.     As a result of the Data Breach, Plaintiff Canario has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Canario has spent several hours dealing with the Data Breach, valuable time Plaintiff Canario otherwise would have spent on other activities, including, but not limited to, work and recreation.

106.     As a result of the Data Breach, Plaintiff Canario has suffered anxiety due to the public dissemination of his PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his PII for purposes of identity theft and fraud.  Plaintiff Canario is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

107.     Plaintiff Canario suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Defendant obtained from Plaintiff; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

108.     As a result of the Data Breach, Plaintiff Canario anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Canario is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

**M.     Notice Pursuant to Massachusetts General Law Chapter 93A**

109.     On or about May 25, 2023, pursuant to Massachusetts General Law Chapter 93A,

Section 9, Plaintiffs sent to Defendant a notice of claims and demand for relief. Plaintiffs intend

to amend this complaint 30 days following the issuance of their demand letter to pursue claims for

violation of the Massachusetts Consumer Protection Act.

**CLASS ALLEGATIONS**

110.     Plaintiffs bring this action on behalf of themselves and, pursuant to Fed. R. Civ. P.

23(a), 23(b)(2), and 23(b)(3), a Class of:

> All persons in the United States whose PII was accessed in the Data
> Breach.

Excluded from the Class is Defendant, its executives and officers, and the Judge(s) assigned to this

case. Plaintiffs reserve the right to modify, change or expand the Class definition after conducting

discovery.

111.     In the alternative, Plaintiffs bring this action on behalf of themselves and, pursuant

to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a subclass of:

> All persons who are residents of the State of Massachusetts whose
> PII was accessed in the Data Breach (the "Massachusetts Subclass").

Excluded from the Massachusetts Subclass is Defendant, its executives and officers, and the

Judge(s) assigned to this case.

112.     <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of

all members is impracticable. While the exact number and identities of individual members of the

Class are unknown at this time, such information being in the sole possession of Defendant and

obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis

allege, that approximately 56,400 individuals comprise the Class and were affected by the Data

26

Breach. The members of the Class will be identifiable through information and records in Defendant's possession, custody, and control.

113.   <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.   Whether Defendant's data security and retention policies were unreasonable;

b.   Whether Defendant failed to protect the confidential and highly sensitive information with which it was entrusted;

c.   Whether Defendant owed a duty to Plaintiffs and Class members to safeguard their PII;

d.   Whether Defendant breached any legal duties in connection with the Data Breach;

e.   Whether Defendant's conduct was intentional, reckless, willful or negligent;

f.   Whether an implied contract was created concerning the security of Plaintiffs' and Class members' PII;

g.   Whether Defendant breached that implied contract by failing to protect and keep secure Plaintiffs' and Class members' PII and/or failing to timely and adequately notify Plaintiffs and Class members of the Data Breach;

h.   Whether Plaintiffs and Class members suffered damages as a result of Defendant's conduct; and

i.   Whether Plaintiffs and the Class are entitled to monetary damages, injunctive relief and/or other remedies and, if so, the nature of any such relief.

114.   <u>Typicality</u>: All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and all members of the Class had their PII compromised in the Data Breach. Plaintiffs and the members of the Class sustained damages as a result of Defendant's uniform wrongful conduct.

115.    <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not materially or irreconcilably conflict with the interests of the Class they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor their counsel have any interests that are antagonistic to the interests of other members of the Class.

116.    <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendant's records and databases.

117.    Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

### **CAUSES OF ACTION**

### **COUNT I — Negligence**
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Massachusetts Subclass)**

118.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

119.    This count is brought on behalf of all Class members.

120.    Defendant owed a duty to Plaintiffs and the Class to use and exercise reasonable and due care in obtaining, retaining, and securing the PII that Defendant collected.

121.    Defendant owed a duty to Plaintiffs and the Class to provide security, consistent with industry standards and requirements, and to ensure that its cyber networks and systems, and the personnel responsible for them, adequately protected the PII that Defendant collected.

122.    Defendant owed a duty to Plaintiffs and the Class to implement processes to quickly detect a data breach, to timely act on warnings about data breaches, and to inform the victims of a data breach as soon as possible after it is discovered.

123.    Defendant owed a duty of care to Plaintiffs and the Class because they were a foreseeable and probable victim of any inadequate data security practices.

124.    Defendant solicited, gathered, and stored the PII belonging to Plaintiffs and the Class.

125.    Defendant knew or should have known they inadequately safeguarded this information.

126.    Defendant knew that a breach of its systems would inflict millions of dollars of damages upon Plaintiffs and Class members, and Defendant was therefore charged with a duty to adequately protect this critically sensitive information.

127.    Defendant had a special relationship with Plaintiffs and Class members. Plaintiffs' and Class members' highly sensitive PII was entrusted to Defendant on the understanding that adequate security precautions would be taken to protect the PII. Moreover, only Defendant had the ability to protect its systems and the PII stored on them from attack.

128.    Defendant's own conduct also created a foreseeable risk of harm to Plaintiffs, Class members, and their PII. Defendant's misconduct included failing to: (1) secure their systems, servers and networks, despite knowing their vulnerabilities, (2) comply with industry standard security practices, (3) implement adequate system and event monitoring, and (4) implement the safeguards, policies, and procedures necessary to prevent this type of data breach.

129.    Defendant breached their duties to Plaintiffs and Class members by failing to provide fair, reasonable, or adequate cyber networks and data security practices to safeguard the PII belonging to Plaintiffs and the Class.

130.    Defendant breached their duties to Plaintiffs and the Class by creating a foreseeable risk of harm through the misconduct previously described.

131.    Defendant breached the duties they owed to Plaintiffs and Class members by failing to implement proper technical systems or security practices that could have prevented the unauthorized access of PII.

132.    The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the PII belonging to Plaintiffs and the Class so that Plaintiffs and the Class can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PII.

133.    Defendant breached the duties it owed to Plaintiffs and the Class by failing to disclose timely and accurately to Plaintiffs and Class members that their PII had been improperly acquired or accessed.

134.    Defendant breached their duty to timely notify Plaintiffs and Class members of the Data Breach by failing to provide direct notice to Plaintiffs and the Class concerning the Data Breach until on or about May 10, 2023.

135.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered a drastically increased risk of identity theft, relative to both the time period before the breach, as well as to the risk born by the general public, as well as other damages, including but not limited to time and expenses incurred in mitigating the effects of the Data Breach.

136.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

### COUNT II — Negligence *Per Se*
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Massachusetts Subclass)**

137.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

138.    This count is brought on behalf of all Class members.

139.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies, such as Defendant, of failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendant's duty.

140.    Under Massachusetts Security Breach Law ("MSBL"), Mass. Gen. Laws Ann. Ch. 93H § 3(a), *et seq.*, entities that maintain PII must provide notice of a security breach "as soon as practicable and without unreasonable delay . . . ."

141.    Furthermore, the Massachusetts Consumer Protection Act ("MCPA"), Ma. Gen. Laws Ann. Ch. 93A § 2(a), *et seq.*, prohibits, inter alia, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

142.    In addition to the FTC rules and regulations, the MSBL, and the MCPA, other states and jurisdictions where victims of the Data Breach are located require that Defendant protect PII from unauthorized access and disclosure, and timely notify the victim of a data breach.

143.    Defendant violated the MSBL, the MCPA, and FTC rules and regulations obligating companies to use reasonable measures to protect PII by failing to comply with applicable industry standards, and by unduly delaying reasonable notice of the actual breach. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, the foreseeable consequences of a Data Breach and the exposure of Plaintiffs' and Class members' sensitive PII.

144.    Defendant's violations of the MSBL, the MCPA, FTC rules and other applicable statutes, rules, and regulations constitutes negligence *per se*.

145.    Plaintiffs and the Class are within the category of persons the MSBL, the MCPA, and the FTC Act were intended to protect.

146.    The harm that occurred as a result of the Data Breach described herein is the type of harm the MSBL, the MCPA, and the FTC Act were intended to guard against.

147.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have been damaged as described herein, continue to suffer injuries as detailed above, are subject to the continued risk of exposure of their PII in Defendant's possession, and are entitled to damages in an amount to be proven at trial.

### COUNT III — Breach of Implied Contract
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Massachusetts Subclass)**

148.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

149.    This count is brought on behalf of all Class members.

150.    Plaintiffs and the Class provided Defendant with their PII.

151.    By providing their PII, and upon Defendant's acceptance of such information, Plaintiffs and the Class, on one hand, and Defendant, on the other hand, entered into implied-in-

fact contracts for the provision of data security, separate and apart from any express contract entered into between the parties.

152.     The implied contracts between Defendant and Plaintiffs and Class members obligated Defendant to take reasonable steps to secure, protect, safeguard, and keep confidential Plaintiffs' and Class members' PII. The terms of these implied contracts are described in federal laws, state laws, and industry standards, as alleged above. Defendant expressly adopted and assented to these terms in its public statements, representations and promises as described above.

153.     The implied contracts for data security also obligated Defendant to provide Plaintiffs and Class members with prompt, timely, and sufficient notice of any and all unauthorized access or theft of their PII.

154.     Defendant breached the implied contracts by failing to take, develop and implement adequate policies and procedures to safeguard, protect, and secure the PII belonging to Plaintiffs and Class members; allowing unauthorized persons to access Plaintiffs' and Class members' PII; and failing to provide prompt, timely, and sufficient notice of the Data Breach to Plaintiffs and Class members, as alleged above.

155.     As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiffs and the Class have been damaged as described herein, will continue to suffer injuries as detailed above due to the continued risk of exposure of their PII in Defendant's possession, and are entitled to damages in an amount to be proven at trial.

### COUNT IV -- Bailment
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Massachusetts Subclass)**

156.     Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

157.     This count is brought on behalf of all Class members.

158.     Plaintiffs' and Class members' PII was provided to Defendant.

159.    In delivering their PII and, Plaintiffs and Class members intended and understood that their PII would be adequately safeguarded and protected.

160.    Defendant accepted Plaintiffs' and Class members' PII.

161.    By accepting possession of Plaintiffs' and Class members' PII, Defendant understood that Plaintiffs and the Class expected their PII to be adequately safeguarded and protected. Accordingly, a bailment (or deposit) was established for the mutual benefit of the parties.

162.    During the bailment (or deposit), Defendant owed a duty to Plaintiffs and the Class to exercise reasonable care, diligence, and prudence in protecting their PII.

163.    Defendant breached their duty of care by failing to take appropriate measures to safeguard and protect Plaintiffs' and Class members' PII, resulting in the unlawful and unauthorized access to and misuse of Plaintiffs' and Class members' PII.

164.    Defendant further breached their duty to safeguard Plaintiffs' and Class members' PII by failing to timely notify them that their PII had been compromised as a result of the Data Breach.

165.    Defendant failed to return, purge, or delete the PII belonging to Plaintiffs and Class members at the conclusion of the bailment (or deposit) and within the time limits allowed by law.

166.    As a direct and proximate result of Defendant's breach of their duties, Plaintiffs and the Class suffered consequential damages that were reasonably foreseeable to Defendant, including but not limited to the damages set forth herein.

167.    As a direct and proximate result of Defendant's breach of their duty, Plaintiffs' and Class members PII that was entrusted to Defendant during the bailment (or deposit) was damaged and its value diminished.

## COUNT V — Violation of the Massachusetts Security Breach Law
**(By Plaintiff Alexander on behalf of the Massachusetts Subclass)**

168.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

169.    This count is brought on behalf of the Massachusetts Subclass.

170.    The Massachusetts Security Breach Law ("MSBL"), Mass. Gen. Laws Ch. 93H § 3(a), provides that a "person or agency that maintains or stores, but does not own or license data that includes personal information about a resident of the commonwealth shall provide notice, as soon as practicable and without unreasonable delay" when the person or agency "knows or has reason to know that the personal information of such resident was acquired or used by a unauthorized person . . . ." Mass. Gen. Laws Ch. 93H § 3(a).

171.    Defendant is a "person or agency" under the MSBL. Mass. Gen. Laws Ch. 93H § 1(a).

172.    Defendant maintains personal information about a resident because Defendant collected and stored Plaintiff Alexander's and the Subclass' PII as part of its regular activities.

173.    Defendant failed to comply with the requirements of Mass. Gen. Laws Ch. 93H § 3(a) because Defendant did not immediately notify Plaintiff and the Subclass of the Data Breach. To the contrary, despite discovering the Data Breach on April 10, 2023, Defendant waited *one month* to notify Plaintiff and the Subclass, sending a notice on or around May 10, 2023.

174.    As a result, Plaintiffs and the Class members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring Defendant from disclosing their PII without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

## COUNT VI — Violation of State Data Breach Statutes
### (By Plaintiffs on behalf of the Class)

175.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

176.    This count is brought on behalf of all Class members.

177.    Defendant is a corporation that owns, maintains, and records PII, and computerized data including PII, about its current and former students, including Plaintiffs and Class members.

178.    Defendant is in possession of PII belonging to Plaintiffs and Class members and is responsible for reasonably safeguarding that PII consistent with the requirements of the applicable laws pertaining hereto.

179.    Defendant failed to safeguard, maintain, and dispose of, as required, the PII within its possession, custody, or control as discussed herein, which it was required to do by all applicable State laws.

180.    Defendant, knowing and/or reasonably believing that Plaintiffs' and Class members' PII was acquired by unauthorized persons during the Data Breach, failed to provide reasonable and timely notice of the Data Breach to Plaintiffs and Class members as required by the following data breach statutes.

181.    Defendant's failure to provide timely and accurate notice of the Data Breach violated the following state data breach statutes:

      a.    Alaska Stat. Ann. § 45.48.010(a), *et seq.*;

      b.    Ark. Code Ann. § 4-110-105(a), *et seq.*;

      c.    Cal. Civ. Code § 1798.80, *et seq.*;

      d.    Colo. Rev. Stat. Ann § 6-1-716(2), *et seq.*;

      e.    Conn. Gen. Stat. Ann. § 36a-701b(b), *et seq.*;

      f.    Del. Code Ann. Tit. 6 § 12B-102(a), *et seq.*;

g.     D.C. Code § 28-3852(a), *et seq.*;

h.     Fla. Stat. Ann. § 501.171(4), *et seq.*;

i.     Ga. Code Ann. § 10-1-912(a), *et seq.*;

j.     Haw. Rev. Stat. § 487N-2(a), *et seq.*;

k.     Idaho Code Ann. § 28-51-105(1), *et seq.*;

l.     Illinois Statute 815 ILCS 530/1, *et seq.*;

m.     Iowa Code Ann. § 715C.2(1), *et seq.*;

n.     Kan. Stat. Ann. § 50-7a02(a), *et seq.*;

o.     Ky. Rev. Stat. Ann. § 365.732(2), *et seq.*;

p.     La. Rev. Stat. Ann. § 51:3074(A), *et seq.*;

q.     Md. Code Ann., Commercial Law § 14-3504(b), *et seq.*;

r.     Mass. Gen. Laws Ann. Ch. 93H § 3(a), *et seq.*;

s.     Mich. Comp. Laws Ann. § 445.72(1), *et seq.*;

t.     Minn. Stat. Ann. § 325E.61(1)(a), *et seq.*;

u.     Mont. Code Ann. § 30-14-1704(1), *et seq.*;

v.     Neb. Rev. Stat. Ann. § 87-803(1), *et seq.*;

w.     Nev. Rev. Stat. Ann. § 603A.220(1), *et seq.*;

x.     N.H. Rev. Stat. Ann. § 359-C:20(1)(a), *et seq.*;

y.     N.J. Stat. Ann. § 56:8-163(a), *et seq.*;

z.     N.C. Gen. Stat. Ann. § 75-65(a), *et seq.*;

aa.     N.D. Cent. Code Ann. § 51-30-02, *et seq.*;

bb.     Okla. Stat. Ann. Tit. 24 § 163(A), *et seq.*;

cc.     Or. Rev. Stat. Ann. § 646A.604(1), *et seq.*;

dd.    R.I. Gen. Laws Ann. § 11-49.3-4(a)(1), *et seq.*;

ee.    S.C. Code Ann. § 39-1-90(A), *et seq.*;

ff.    Tenn. Code Ann. § 47-18-2107(b), *et seq.*;

gg.    Tex. Bus. & Com. Code Ann. § 521.053(b), *et seq.*;

hh.    Utah Code Ann. § 13-44-202(1), *et seq.*;

ii.    Va. Code. Ann. § 18.2-186.6(B), *et seq.*;

jj.    Wash. Rev. Code Ann. § 19.255.010(1), *et seq.*;

kk.    Wis. Stat. Ann. § 134.98(2), *et seq.*; and

ll.    Wyo. Stat. Ann. § 40-12-502(a), *et seq.*

182.    As a result of Defendant's failure to reasonably safeguard Plaintiffs' and Class members' PII, and the failure to provide reasonable and timely notice of the Data Breach to Plaintiffs and Class members, Plaintiffs and the Class have been damaged as described herein, continue to suffer injuries as detailed above, are subject to the continued risk of exposure of their PII in Defendant's possession, and are entitled to damages in an amount to be proven at trial.

## COUNT VII – Violation of State Consumer Protection Statutes
### (On behalf of Plaintiffs and the Class)

183.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

184.    This count is brought on behalf of all Class members.

185.    Defendant is a "person" as defined in the relevant state consumer statutes.

186.    Defendant engaged in the conduct alleged herein that was intended to result, and which did result, in the trade and commerce with Plaintiffs and Class members. Defendant is engaged in, and its acts and omissions affect, trade and commerce. Further, Defendant's conduct implicates consumer protection concerns generally.

187. Defendant's acts, practices and omissions were done in the course of Defendant's business of marketing, facilitating, offering for sale, and selling goods and services throughout the United States.

188. Defendant's unlawful, unfair, deceptive, fraudulent and/or unconscionable acts and practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Class members' PII, which was a direct and proximate cause of the Data Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents in the industry, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' PII, including but not limited to duties imposed by the FTC Act and similar state laws, rules, and regulations, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiffs' and Class members' PII, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that they would comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiffs' and the Class members' PII;

f. Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiffs' and Class members' PII;

g. Omitting, suppressing, and concealing the material fact that they did not comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiffs' and Class members' PII; and

h. Failing to promptly and adequately notify Plaintiffs and Class members that their PII was accessed by unauthorized persons in the Data Breach.

189. By engaging in such conduct and omissions of material facts, Defendant has violated state consumer laws prohibiting representing that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have,"

representing that "goods and services are of a particular standard, quality or grade, if they are of another", and/or "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding"; and state consumer laws prohibiting unfair methods of competition and unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices.

190.    Defendant's representations and omissions were material because they were likely to deceive reasonable persons about the adequacy of Defendant's data security and ability to protect the confidentiality of PII.

191.    Defendant intentionally, knowingly, and maliciously misled Plaintiffs and Class members and induced them to rely on their misrepresentations and omissions.

192.    Had Defendant disclosed that its data systems were not secure and, thus, vulnerable to attack, they would have been unable to continue in business and they would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant received, maintained, and compiled Plaintiffs' and Class members' PII without advising that Defendant's data security practices were insufficient to maintain the safety and confidentiality of their PII. Accordingly, Plaintiffs and the Class members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

193.    Past breaches within the industry put Defendant on notice that their security and privacy protections were inadequate.

194.    Defendant's practices were also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected in laws like the MSBL, the MCPA, and the FTC Act.

195.   The harm these practices caused to Plaintiffs and Class members outweighed their utility, if any.

196.   The damages, ascertainable losses and injuries, including to their money or property, suffered by Plaintiffs and Class members as a direct result of Defendant's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices as set forth herein include, without limitation:

    a.   unauthorized charges on their debit and credit card accounts;

    b.   theft of their PII;

    c.   costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

    d.   loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse effects on their credit scores and adverse credit notations;

    e.   costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the Data Breach, including without limitation finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

    f.   the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

    g.   damages to and diminution in value of their personal information entrusted to Defendant and with the understanding that Defendant would safeguard their data against theft and not allow access and misuse of their data by others; and

    h.   the continued risk to their PII, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect data in its possession.

197.    Defendant's conduct described herein, including without limitation, Defendant's failure to maintain adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' PII, Defendant's failure to disclose the material fact that they did not have adequate computer systems and safeguards to adequately protect Plaintiffs' and Class members' PII, Defendant's failure to provide timely and accurate notice to of the material fact of the Data Breach, and Defendant's continued acceptance of Plaintiffs' and Class members' PII constitutes unfair methods of competition and unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices in violation of the following state consumer statutes:

a.    The Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5(5), (7) and (27), *et seq.*;

b.    The Arizona Consumer Fraud Act, A.R.S. § 44-1522;

c.    The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107(a)(1)(10) and 4-88-108(1)(2), *et seq.*;

d.    The California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and the California Unfair Competition Law, Cal. Bus. and Prof. Code, § 17200, *et seq.*;

e.    The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b), *et seq.*;

f.    The Delaware Deceptive Trade Practices Act, Del. Code Ann. Title 6, § 2532(5) and (7), *et seq.*, and the Delaware Consumer Fraud Act, Del. Code Ann. Title 6 § 2513, *et seq.*;

g.    The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204(1), *et seq.*;

h.    The Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-393(a) and (b)(2), (5) and (7), *et seq.*;

i.    The Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7) and (12), *et seq.*; and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. § 480-2(a), *et seq.*;

j.    The Idaho Consumer Protection Act, Idaho Code §§ 48-603(5), (7), (17) and (18), *et seq.*; and Idaho Code § 48-603C, *et seq.*;

k.      The Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill. Stat. § 505/2, *et seq.*;

l.      The Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-3(a) and (b)(1) and (2), *et seq.*;

m.      The Iowa Consumer Fraud Act, I.C.A. §§ 714H.3 and 714H.5, *et seq.*;

n.      The Kansas Consumer Protection Act, Kan. Stat. §§ 50-626(a) and (b)(1)(A)(D) and (b)(3), *et seq.*;

o.      The Kentucky Consumer Protection Act, K.R.S. § 367.170(1) and (2), *et seq.*;

p.      The Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1405(A), *et seq.*;

q.      The Maine Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1212(1)(E) and (G), e*t seq.*, and the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 207, *et seq.*;

r.      The Maryland Consumer Protection Act, Md. Code Commercial Law, § 13-301(1) and (2)(i), and (iv) and (9)(i), *et seq.*;

s.      The Massachusetts Consumer Protection Act, Ma. Gen. Laws Ann. Ch. 93A § 2(a), *et seq.*;

t.      The Michigan Consumer Protection Act, M.C.P.L.A. § 445.903(1)(c)(e),(s) and (cc), *et seq.*;

u.      The Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(5), (7) and (13), et seq., the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and Minn. Stat. § 8.31, subd. 3(a);

v.      The Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-5(1), (2)(e) and (g), *et seq.*;

w.      The Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020(1), *et seq.*;

x.      The Montana Unfair Trade Practices and Consumer Protection Act, MCA §§ 30-14-103, *et seq.*;

y.      The Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302(a)(5) and (7), *et seq.*;

z.    The Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. § 598.0915(5) and (7), *et seq.*;

aa.    The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2(v) and (vii), *et seq.*;

bb.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, *et seq.*;

cc.    The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2(D)(5)(7) and (14) and 57-12-3, *et seq.*;

dd.    New York Business Law, N.Y. Gen. Bus. Law § 349(a);

ee.    The North Carolina Unfair Trade Practices Act N.C.G.S.A. § 75-1.1(a), *et seq.*;

ff.    The North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code § 51-15-02, *et seq.*;

gg.    The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.02(A) and (B)(1) and (2), *et seq.*;

hh.    The Oklahoma Consumer Protection Act, 15 Okl. Stat. Ann. § 753(5), (7) and (20), *et seq.*; and the Oklahoma Deceptive Trade Practices Act, 78 Okl. Stat. Ann. § 53(A)(5) and (7), *et seq.*;

ii.    The Oregon Unfair Trade Practices Act, Or. Rev. Stat. § 646.608(1)(e)(g) and (u), *et seq.*;

jj.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v)(vii) and (xxi), and 201-3, *et seq.*;

kk.    The Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1(6)(v), (vii), (xii), (xiii) and (xiv), *et seq.*;

ll.    The South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20(a), *et seq.*;

mm.    The South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1), *et seq.*;

nn.    The Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104(a) and (b)(5) and (7);

oo.    The Texas Deceptive Trade Practices- Consumer Protection Act, V.T.C.A., Bus. & C. § 17.46(a), (b)(5) and (7), *et seq.*;

pp.    The Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1) and (2)(a) and (b);

qq.  The Vermont Consumer Fraud Act, 9 V.S.A. § 2453(a), *et seq.*;

rr.  The Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200(A)(5)(6) and (14), *et seq.*;

ss.  The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, *et seq.*;

tt.  The West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A-6-104, *et seq.*;

uu.  The Wisconsin Deceptive Trade Practices Act, W.S.A. § 100.20(1), *et seq.*; and

vv.  The Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-105(a), (i), (iii) and (xv), *et seq.*

198.  Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring Defendant from disclosing their PII without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

## COUNT VIII — Intrusion Upon Seclusion
### (By Plaintiffs on behalf of the Class, or, in the alternative, the Massachusetts Subclass)

199.  Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

200.  This count is brought on behalf of all Class members.

201.  Plaintiffs and Class members had a reasonable expectation of privacy in the PII that Defendant possessed and/or continues to possess.

202.  By failing to keep Plaintiffs' and Class members' PII safe, and by misusing and/or disclosing their PII to unauthorized parties for unauthorized use, Defendant invaded Plaintiffs' and Class members' privacy by:

a.  Intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

b.  Publicizing private facts about Plaintiffs and Class members, which is highly offensive to a reasonable person.

45

203.    Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiffs' position would consider Defendant's actions highly offensive.

204.    Defendant invaded Plaintiffs' and Class members' right to privacy and intruded into Plaintiffs' and Class members' private affairs by misusing and/or disclosing their PII without their informed, voluntary, affirmative, and clear consent.

205.    As a proximate result of such misuse and disclosures, Plaintiffs' and Class members' reasonable expectation of privacy in their PII was unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiffs' and Class members' protected privacy interests.

206.    In failing to protect Plaintiffs' and Class members' PII, and in misusing and/or disclosing their PII, Defendant has acted with malice and oppression and in conscious disregard of Plaintiffs' and the Class members rights to have such information kept confidential and private, in failing to provide adequate notice, and in placing its own economic, corporate, and legal interests above the privacy interests of its thousands of students. Plaintiffs, therefore, seek an award of damages, including punitive damages, on behalf of Plaintiffs and the Class.

## COUNT IX — Unjust Enrichment
### (By Plaintiffs on behalf of the Class, or, in the alternative, the Massachusetts Subclass)

207.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

208.    This count is brought on behalf of all Class members.

209.    Plaintiffs and the Class have an interest, both equitable and legal, in their PII that was collected and maintained by Defendant.

210.    Defendant was benefitted by the conferral upon it of Plaintiffs' and Class members' PII and by their ability to retain and use that information. Defendant understood that it was in fact so benefitted.

211.    Defendant also understood and appreciated that Plaintiffs' and Class members' PII was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that information.

212.    But for Defendant's willingness and commitment to maintain its privacy and confidentiality, Plaintiffs and Class members would not have provided or authorized their PII to be provided to Defendant, and Defendant would have been deprived of the competitive and economic advantages it enjoyed by falsely claiming that their data-security safeguards met reasonable standards. These competitive and economic advantages include, without limitation, wrongfully gaining students, gaining the reputational advantages conferred upon it by Plaintiffs and Class members, collecting excessive advertising and sales revenues as described herein, monetary savings resulting from failure to reasonably upgrade and maintain data technology infrastructures, staffing, and expertise raising investment capital as described herein, and realizing excessive profits.

213.    As a result of Defendant's wrongful conduct as alleged herein (including, among other things, their deception of Plaintiffs, the Class, and the public relating to the nature and scope of the data breach; their failure to employ adequate data security measures; their continued maintenance and use of the PII belonging to Plaintiffs and Class members without having adequate data security measures; and its other conduct facilitating the theft of that PII) Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class.

214.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiffs' and Class members' sensitive PII, while at the same time failing to maintain that information secure from intrusion.

215.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits they received, and are still receiving, without justification, from Plaintiffs and the Class in an unfair and unconscionable manner. Defendant's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

216.    The benefit conferred upon, received, and enjoyed by Defendant was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain the benefit.

217.    Defendant is therefore liable to Plaintiffs and the Class for restitution in the amount of the benefit conferred on Defendant as a result of their wrongful conduct, including specifically the value to Defendant of the PII that was accessed and exfiltrated in the Data Breach and the profits Defendant received from the use and sale of that information.

## COUNT X — Declaratory Judgment
**(By Plaintiffs on behalf of the Class, or, in the alternative, the Massachusetts Subclass)**

218.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

219.    This count is brought on behalf of all Class members.

220.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described herein.

221.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiffs' and Class members' PII, and whether Defendant is currently maintaining data security

measures adequate to protect Plaintiffs and Class members from further data breaches that compromise their PII. Plaintiffs allege that Defendant's data security measures remain inadequate.

222.     Plaintiffs and the Class continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

223.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Defendant continues to owe a legal duty to secure Plaintiffs' and Class members' PII, to timely notify them of any data breach, and to establish and implement data security measures that are adequate to secure PII.

224.     The Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect Plaintiffs' and Class members' PII.

225.     If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy. The threat of another breach of the PII in Defendant's possession, custody, and control is real, immediate, and substantial. If another breach of Defendant's network, systems, servers, or workstations occurs, Plaintiffs and the Class will not have an adequate remedy at law, because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

226.     The hardship to Plaintiffs and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another massive data breach occurs, Plaintiffs and the Class will likely be subjected to substantial identify theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

227.    Issuance of the requested injunction will serve the public interest by preventing another data breach by Defendant, thus eliminating additional injuries to Plaintiffs and the thousands of Class members whose confidential information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of all members of the Class, respectfully requests that the Court enter judgment in their favor and against Defendant, as follows:

A.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are proper class representatives; and appoint Plaintiffs' Counsel as Class Counsel;

B.    That Plaintiffs be granted the declaratory relief sought herein;

C.    That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

D.    That the Court award Plaintiffs and the Class members compensatory, consequential, and general damages in an amount to be determined at trial;

E.    That the Court award Plaintiffs and the Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

F.    That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

G.    That the Court award pre- and post-judgment interest at the maximum legal rate;

H.    That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

I.    That the Court grant all other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

Date: May 26, 2023                    Respectfully Submitted,

/s/ Patrick J. Sheehan
Patrick J. Sheehan  (BBO# 639320)
**WHATLEY KALLAS, LLP**
101 Federal Street, 19th Floor
Boston, Massachusetts 02110
Telephone: (617) 203-8459
Facsimile: (800) 922-4851
psheehan@whatleykallas.com

Bryan L. Clobes (*pro hac vice* anticipated)
**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
205 N Monroe St.
Media, Pennsylvania 19063
Telephone: (215) 864-2800
Facsimile: (215) 964-2808
bclobes@caffertyclobes.com

Nickolas J. Hagman (*pro hac vice* anticipated)
**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
nhagman@caffertyclobes.com

*Attorneys for Plaintiffs and the Proposed Class*